## SECRIST *v.* GREEN.

1. An acknowledgment on the day of its date, before a master of chancery, in New York, of a deed executed 3d March, 1818—probate being made by a subscribing witness personally known to the master, of the identity of the party professing to grant with the party presenting himself to acknowledge—and the record of acknowledgment certifying that the grantor "consented that the deed might be recorded where necessary"—was a sufficient acknowledgment of the deed, by the laws of New York regulating the subject, at the date when the deed was made.
2. Having been so; and conveying land in Illinois, such deed was entitled to be recorded in Illinois; the laws of that State allowing deeds for lands in the State, executed out of it but within the United States, to be recorded when acknowledged or proved in conformity with the law of the State where executed; and when so recorded, it was properly read without other proof of execution.
3. Reputation being sufficient to establish death and heirship, a statement of them in a deposition, by an ancient witness, long and intimately acquainted with the family about which he testifies, and who says that certain children ("as appears from entries in the family Bible, and which I believe to be true,") died at such a time, and another child at another time, "as I am informed and believe,"—is not subject to exception at the trial.
4. When a decree finds that due legal notice of intended proceedings in partition had been given to all the heirs of a decedent, the finding is, in Illinois, *primâ facie* though not conclusive evidence of the fact.
5. Jurisdiction of a court being once established, its proceedings cannot be questioned collaterally by one not a party to them, and who seeks no rights under them.
6. By the laws of Illinois, a copy of a will proved in one State, and with its probate and letters duly authenticated under the act of Congress for the authentication of records to be used in others, may, after certain formalities gone through, be recorded in the county courts of a county of Illinois, where the testator had property. And when so recorded, certified copies of such county court records are evidence; being so under the general laws of the State.

GREEN brought ejectment against Secrist, in the Circuit Court for Northern Illinois, to recover land in that State

which had belonged originally to Tibbitts.    The title which he set up, and the respective items of which he offered in evidence on the trial, was thus:

1. A deed from Tibbitts to William James, of Albany, *acknowledged as hereinafter stated.*

2. Death of this William James, and a descent to his heirs-at-law, of whom J. B. James was alleged to be one; *all asserted to be proved by a deposition of Mr. Gideon Hawley.*

3. Partition of a large body of lands in *Pike, Morgan, Adams,* and other counties in Illinois, of which the piece sued for was part, and allotment of it to this J. B. James, under proceedings in the Circuit Court of *Pike* County, Illinois; *a record from which court was offered.*

4. Death of J. B. James, and his last will, making one Dexter executor, giving power to sell real estate, with probate and letters testamentary, which will, &c., was presented in the form of a certified transcript of a *record of Adams County, Illinois, recording, in that county, a copy* (duly certified under the act of Congress,* "to prescribe the mode in which the public acts, records, and judicial proceedings in each State shall be authenticated so as to take effect in every other State") of the will, proved and registered in Albany, with the probate and letters testamentary *there* granted thereon to Dexter, as beforesaid.

5. Deed from Dexter, executor, as above mentioned, to Green, or persons through whom he claimed, for the premises demanded.

1. *As respected the first item in the title—the deed from Tibbitts to James.*    The deed, *dated 3d March,* 1818, was thus acknowledged on the day of its date:

STATE OF NEW YORK, *ss:*

Be it remembered that, on the day of the date of the within deed, personally came before me the within named George Tibbitts, and acknowledged before me that he had executed the within deed freely, for the uses and purposes therein mentioned, and *consented that the same might be recorded where necessary;* and

---

\* 1 Stat. at Large, 112; Act of May 26, 1790.

further that Zachariah Galusha, to me personally known, a subscribing witness to the execution of this deed, having been duly sworn, made oath before me that he knew the said George Tibbitts to be the same person described in and who executed the said deed, and that he was a subscribing witness to the execution thereof; all which being satisfactory to me, the said deed may therefore be recorded.

GIDEON HAWLEY,<br>Master in Chancery.

The defendant made objection to the deed, because:

(i) That there was no proof that the person taking the acknowledgment was really a master in chancery; and,

(ii) That a master in chancery of the State of New York had no power to take acknowledgments to deeds for lands in Illinois, and to be recorded there; a matter of course which depended on the statute laws of Illinois, and perhaps on those of New York also. The court below deemed the acknowledgment sufficient, and the deed was read.

2. *As respected the second item in the title—the death of William James and the heirship of J. B. James.* Both facts rested on the deposition of Mr. Gideon Hawley, aged seventy-two, a retired counsellor-at-law. Mr. Hawley testified to his long and intimate acquaintance with James, the ancestor, and to his death; to the fact of his leaving children, whose number and names he stated. He mentioned who of them were living, and " that the children who died prior to his decease (*as appears from entries in his family Bible, and which this deponent believes to be true*"), were J. B. James, &c.; that J. B. James, son of the said William, died in Chicago, on or about 22d May, 1856, testate as I am *informed and believe.* The deposition was objected to, because " as to the contents of the family Bible, the said Bible itself is the best evidence, and because so much of the deposition as is on information and belief is incompetent." The objection was overruled, and the deposition read.

3. *In regard to the next link—which depended on the proceedings and allotment in partition under proceedings had in the Circuit Court of Pike County.* It was not denied that the court named

had jurisdiction of matters of partition; but objection was made that it nowhere appeared that the parties, James, were properly or legally brought into court, . . . and because the bill for partition was not filed or suit brought in the county in which the greatest amount of lands lie (as required by the statute), and because publication was made in Morgan County adjoining, and not in Pike County, where the proceedings in partition were had.

By the laws of Illinois all the parties in interest were required to have notice of the application for such partition, by summons duly served, _or_ by advertisement, to be published for four weeks in the nearest newspaper to the premises.*

In the case of this partition, the record on the subject of notice ran thus:

" The cause now coming on to be heard, and it appearing satisfactorily to the court that due legal notice had been given to all the defendants in this suit of the pendency of the same, by publication in the 'Illinoian,' a public newspaper printed in Jacksonville, in the County of Morgan, and State of Illinois, four weeks successively, commencing on the first day of July, A.D. 1843, and ending on the fifth day of August, A.D. 1843; and the guardian _ad litem_ of the infant defendants having filed his answer, setting up no opposition to the granting of the prayer of said bill, and all the other defendants, although three times solemnly called, coming not, but making default, and summons having issued, in pursuance to law, for all the defendants in this suit, and there being no opposition to the prayer of the bill, it is ordered that the said bill be taken for confessed."

The court below allowed the record to be read.

_As to the fourth and final matter—the death of J. B. James, the probate of his will, and the record produced from Adams County, Illinois._  It appeared that J. B. James died leaving a will executed at Albany, New York, where he lived; that this will was admitted to probate in the Surrogate's Court of Albany

---

* See Revised Laws of Illinois, 1833, p. 238, §§ 13, 14, 15.

County, and letters testamentary granted by the surrogate, Dexter, who was named in it executor and trustee; that the will with its probate and letters, properly authenticated by the surrogate according to the act of Congress already mentioned—which enacts that records and judicial proceedings authenticated as it directs shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from whence they are taken—was recorded in Adams County, Illinois. This record from Adams County, Illinois, it was which was offered—offered, of course, as a foundation for the introduction of the fourth link in the chain of Green, the plaintiff's, title—the deed, namely, from Dexter, executor of J. B. James.

To understand the ground on which the record from Adams County, obviously not admissible on common-law principles, was offered, it is necessary to say that by statute in Illinois, passed in 1853,* entitled "An act in relation to conveyances of real estate by non-resident creditors," it was made lawful for a non-resident executor, who had proved the will of his testator and accepted the trust, in any one of the States of the Union, to execute the will in Illinois in the same manner as though he had qualified in that State. Before he could sell any real estate he was required to produce the will, or a copy of it, with the probate of it and authority to execute it, properly authenticated, and have it recorded in the County Court of that county in Illinois, where the property of the testator, or a part of it, was situated; and he was obliged to give bond for the faithful appropriation of the effects of the testator in Illinois. It was then the duty of the judge of the County Court to certify that such will was duly authenticated under the provisions of the act of the legislature.

The record from Adams County was duly authenticated. It showed that the bond which the Illinois statute of 1853 requires for "faithful appropriation" had been given by

---

* 2 Purple's Statutes, 1226.

Dexter; and that the judge of the County Court had made all the authentication required by the act to authorize the recording in Adams County.

The reading of this record from Adams County was objected to, because it was a record not of the original of any will, but a record of that which was but an alleged transcript of one; a copy of a copy therefore, or at best a record of a record. . . . The court below overruled the objection, and the record was read.

Two trials were had below, both resulting for the plaintiff. On exceptions to the evidence already mentioned as received, the questions here were:

1. Whether the acknowledgment of the deed to William James, before the New York master in chancery was sufficient to allow it to be read in Illinois?

2. Whether the heirship of J. B. James had been sufficiently proved?

3. Whether the court below erred in suffering the record of the proceedings in partition in Pike County to go to the jury?

4. Whether it erred in allowing to be read the record from Adams County, of the copy of J. B. James's will, proved originally in Albany, New York, and with the record of probate and the letters testamentary, certified under the act of Congress as already mentioned?

*Mr. Grimes, for the plaintiff in error; Mr. Browning, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

1. The authentication by the master in chancery in New York of the deed to William James, when made, was in conformity to the laws of New York for the conveyance of real estate within the State. By the terms of an act concerning the proof of deeds and conveyances, passed by the legislature of New York on the 6th of April, 1801, and substantially re-enacted on the 12th of April, 1813, a master in chancery was authorized to take the proof and acknowledg

ment of deeds.* This authority remained unchanged until
July 1, 1818.† After that, he was forbidden to do any of-
ficial act which did not exclusively pertain to his duties as a
master in the Court of Chancery. If the grantor was not
known to the officer taking the acknowledgment, the law
required that the deed should be proved by satisfactory
evidence, and that the substance of the evidence, with the
names of the witnesses, should be incorporated in the cer-
tificate of acknowledgment. All this was done in the case
of this deed; and if the lands had been in New York it is
certain that the deed could have been read in evidence in
any of the courts of that State without further proof. What
effect is to be given to such an instrument, thus authenti-
cated, in Illinois, must of course depend wholly upon the
statutes of that State; and on this point we are not left in
doubt. Provision is made in an act of the legislature of Illi-
nois‡ for the record of all deeds to lands in that State which
have been executed without the State and within the United
States, and have been acknowledged or proved in conformity
to the laws of the State where executed. The act also de-
clares that all such deeds, when so recorded, may be used
as evidence without further proof of their execution. The
deed under review, having been acknowledged and proved,
as required by the laws of New York, when it was executed,
was entitled to be recorded in Illinois, and was properly read
in evidence. It was, indeed, insisted that there should
have been some proof of the official character of the master
in chancery. But neither the legislatures of New York or
Illinois saw fit to require any such proof, and therefore none
was necessary.§

2. As respects the deposition of Mr. Hawley, read to the
jury to prove the death of William James, and the names
of his heirs-at-law, the exceptions taken to it cannot be sus-

* See vol. 1 Laws of New York, published at Albany by authority in
1802, p. 478; also Revised Laws of New York of 1813, p. 369.

† See 4th vol. Laws of New York, session 1818, p. 44.

‡ Session Laws Illinois, 1847, p. 47, § 3.

§ Vance *v.* Schuyler, 1 Gilman, 163.

tained; for the witness really testifies to every material fact of his own knowledge, although it is competent to prove death and heirship by reputation.

3. Did the court err in suffering the record of the proceedings in partition to go to the jury?

The Circuit Court of Pike County, where a part of the real estate was situated, had jurisdiction, on proper bill or petition filed, to decree partition. All the parties in interest were required to have notice of the application for such partition, by summons duly served *or* by advertisement, to be published for four weeks in the nearest newspaper to the premises.

Such a notice was published, for the time specified, in a newspaper printed in an adjoining county, and the presumption is, that it was the nearest newspaper to the premises, in the absence of any proof to the contrary, or that a newspaper was printed in Pike County.\* But the decree finds that due legal notice had been given to all the defendants, and the courts of Illinois hold that such a finding is *primâ facie* evidence of the fact, although not conclusive.† There was nothing in the record to show that the finding was not true, and the burden of proof rested on Secrist, who attacked the jurisdiction, to prove that notice in conformity with the statute was not given, notwithstanding the finding of the court.‡

The jurisdiction of the court being once established, its subsequent proceedings cannot be collaterally questioned. Secrist is a stranger to the proceedings, and does not claim under them, and can make no objection that does not go to the jurisdiction of the court. He cannot be allowed to object to a result of which the parties to the decree have not complained.§ There was enough in the record to show that the court had jurisdiction of the subject-matter and the parties; and one who was not a party to it, and seeks no rights under it, cannot complain that it does not contain the original bill or petition for partition.

---

\* Stow *v* Kimball, 28 Illinois, 107.     † 30 Id. 116, Goudy *v.* Hall.
‡ Ib. 117                § Gregg *v.* Forsyth, 24 Howard, 180.

We think all the objections which were taken to the introduction of this record in evidence were properly overruled by the Circuit Court.

Whether the record from Adams County—read in evidence as a foundation for the introduction of a deed from Dexter, the executor, which was a link in Green's chain of title—was properly received, depends altogether upon the laws of Illinois. In 1853, the legislature of that State provided for the conveyance of real estate by non-resident executors. The substance of the act has been stated on a preceding page.* What the act requires was done in regard to the will of Mr. J. B. James, and the record which was resisted shows that the executor complied literally with its requirements, and was authorized to execute the powers given in the will, so far as to convey real estate in Illinois. A certified copy of the record of the County Court of Adams County became, under the general laws of the State, evidence.

JUDGMENT AFFIRMED WITH COSTS.