## METROPOLITAN LIFE INSURANCE COMPANY v. LYONS.

### [No. 7,654. Filed May 31, 1912.]

1. DEATH.—*Presumption from Absence.—Statutory Provisions.—
Scope.*—The provisions of §2747 Burns 1908, §2232 R. S. 1881,
and §2748 Burns 1908, Acts 1883 p. 209, which create a presump-
tion of death from one's absence from his usual place of resi-
dence for the space of five years relate exclusively to the settle-
ment of the estates of absentees. p. 537.
2. DEATH.—*Presumption from Absence.—Common Law Rule.*—At
common law a person is presumed to be living for seven years
after his disappearance, and a presumption of death arises only
from an unexplained absence for that length of time. p. 538.
3. INSURANCE.—*Life Insurance.—Presumption of Death.—Find-
ings.*—A finding for plaintiff, in an action on an insurance policy,
based on a paragraph of complaint counting on the absence of
the assured from his usual place of residence for the space of five
years, is contrary to law. p. 538.
4. DEATH.—*Presumptions.—Burden.*—Where one is shown to have
been alive at a certain time, the presumption of life continues
and the burden of proving that he is dead rests on the party
asserting such fact. p. 538.
5. DEATH.—*Presumption from Absence.—Evidence.*—Proof of ab-
sence for seven years will not alone give rise to the presumption
of death, but in addition to such absence it must be shown that

the absent person left for a temporary purpose and has not returned and that those most likely to hear from him have received no word or tidings from him; and where the absentee established a residence abroad, the presumption of death will not arise from the fact that his family and friends have heard nothing from him for seven years unless it is also shown that due inquiry was made at the place of such residence and that no tidings of him could be obtained. p. 538.

6. DEATH.—*Proof of Death as a Fact.—Evidence.—Sufficiency.—*Where it is necessary to prove the death of an absentee at a particular time short of the time required to establish the presumption of death, it may be shown by direct evidence or by proof of circumstances from which such death may be rightly and reasonably inferred, but not by facts and circumstances alone which would be sufficient only to create a presumption of death after the lapse of seven years. p. 539.

7. INSURANCE.—*Life Insurance.—Death of Assured.—Evidence.—Sufficiency.—*Evidence, in an action on a life policy, showing that the insured, who was unmarried, had lived with his sister for about three years and that shortly after taking out the policy in suit for her benefit, he went to a distant city where he obtained employment, that the sister received letters from him regularly for a little more than a year, after which she received no further letters, but not showing anything as to his character, habits, affections, business or objects in life, although sufficient to raise the presumption of death after a lapse of seven years, was insufficient to warrant the court in finding the death of the insured as a fact within that period. p. 541.

8. EVIDENCE.—*Hearsay.—Declarations of Deceased Persons.—Admissibility to Prove Pedigree.—*Hearsay evidence is admissible to prove pedigree which embraces facts as to birth, marriage and death, and the date when the events happened, as well as descent and relationship, but to render the declarations of deceased persons admissible to prove such facts it must be shown that the declarants were related by blood or marriage to the family of the person to whom the declarations relate. p. 543.

9. DEATH.—*Evidence.—Hearsay.—*The death of an individual, though disconnected from any question of pedigree, and for whatever purpose sought to be established, may be proved by hearsay, subject to the same restrictions that are applicable in cases where matters of pedigree are involved. p. 544.

10. DEATH.—*Evidence.—Extent of Rule Admitting Hearsay.—*The rule as to the admission of hearsay evidence to prove the death of an individual extends only to the general reputation in the family of such person and among his kindred. p. 544.

11. EVIDENCE.—*Hearsay.—Ground of Admissibility to Prove Pedigree.*—Hearsay evidence on matters of pedigree is admitted to prove remote facts in family history on the ground of necessity. p. 544.

12. DEATH.—*Evidence.—Hearsay.—Declaration by One Not Related to Family.*—In an action on a life policy, testimony of a witness that he and his deceased brother knew the insured and that the brother had told witness that the insured was drowned, was inadmissible because it did not appear that the declarant was a member of the insured's family or that he was related thereto by blood or marriage, and also for the reason that the fact of the insured's death was not one of such remote origin as to be known only by reputation and family tradition. p. 545.

13. TRIAL.—*Findings.—Incompetent Evidence.*—In an action on a life policy, where the only evidence of the death of the insured consisted of testimony that a deceased person, not shown to have been related to the family of the insured had stated that the insured was drowned, such evidence, although incompetent, was, in the absence of any objection to its admissibility, sufficient to sustain a finding that the insured had died. p. 546.

From Superior Court of Marion County (17,406); *Clarence E. Weir,* Judge.

Action by Catherine Lyons against the Metropolitan Life Insurance Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*W. H. H. Miller, C. C. Shirley* and *Samuel D. Miller,* for appellant.

*Thomas D. McGee, Edward D. Reardon* and *James H. Drew,* for appellee.

LAIRY, J.—Appellee recovered a judgment on a policy of insurance issued by appellant on the life of Michael Broderick.

The complaint was in two paragraphs, and the only substantial difference between them is that the first paragraph avers that Michael Broderick died on or about July 1, 1903, while the second paragraph does not allege the death of Broderick, but avers that "on or about the ———— day of August, 1901, the said Broderick left the city of Indianapolis and went to the city of St. Louis in the state of Mis-

souri; that on or about the ———— day of January, 1903, the said Broderick left his usual place of residence and went to parts unknown and has absented himself from his usual place of residence ever since for a space of more than five years, and that he has not been heard of or seen by any one since.''

The only error assigned is the action of the trial court in overruling appellant's motion for a new trial; and the only questions presented by the brief of appellant are that the decision of the court is not sustained by sufficient evidence, and that the decision of the court is contrary to law.

To sustain the first paragraph of complaint the evidence must prove as a fact that the assured was dead before the commencement of the action; but to sustain the second paragraph it was not necessary to prove that such assured was in fact dead. Evidence showing that the assured had absented himself from his usual place of residence and gone to parts unknown for a period of five years would be sufficient to sustain the allegations of the second paragraph, provided the facts attending such disappearance and absence were such as to give rise to the presumption of death as provided by §§2747, 2748 Burns 1908, §2232 R. S. 1881, Acts 1883 p. 209.

Even though it be conceded that the evidence is sufficient to sustain every material allegation of the second paragraph of complaint, a verdict resting on that paragraph

1. could not be sustained, for the reason that such a verdict is contrary to law. This court has recently held that the sections of statute to which we have just referred relate exclusively to the settlement of the estates of absentees, and do not apply to a case such as the one we are now considering. *Connecticut Mut. Life Ins. Co.* v. *King* (1911), 47 Ind. App. 587, 93 N. E. 1046.

At common law a person was presumed to be living for seven years after his disappearance, and a presumption of death arose only from an unexplained absence for that

length of time. It was held in the case just cited that the statutes under consideration do not change the common law in this regard, except in so far as the settlement of the estates of such absentees is concerned. In this case, therefore, proof of the unexplained absence of the assured for five years would not be sufficient to authorize a presumption of death under the statutes relied on, and a·finding in favor of the plaintiff on the second paragraph of complaint is contrary to law.

The only other question is the sufficiency of the evidence to sustain the decison on the first paragraph of complaint. If the evidence is sufficient to authorize the court to find as a fact that Michael Broderick was dead before the commencement of the action, or if the facts proved were sufficient to warrant an inference of such fact, then the decision can be sustained on this paragraph.

Where a person is shown to have been alive at a particular time, the presumption of life continues, and the burden of proving that he is dead rests on the party asserting such fact. If the person alleged to be dead has been absent from his home for seven years, a presumption of death may arise, but proof of absence alone will not give rise to this presumption. If, in addition to the absence of such person for the required time, it is shown that he left for a temporary purpose of business or pleasure and that he had not returned, and that those most likely to hear from him have received no word or tidings from him, the presumption of death arises after an absence of seven years. *Thomas* v. *Thomas* (1884), 16 Neb. 553, 20 N. W. 846; *Brown* v. *Jewett* (1846), 18 N. H. 230.

If it is known, however, that he established a fixed residence abroad, proof that his family and friends have heard nothing from him for seven years will not be sufficient to establish the presumption of his death. In addition to this fact, it must be shown that due inquiry was made at the place where he had established such residence, and that no

tidings of him could be obtained.  *Bailey* v. *Bailey* (1877), 36 Mich. 181; *Wentworth* v. *Wentworth* (1880), 71 Me. 72. In some cases it becomes material to prove the death of such an absentee at some particular time within the seven years, or to prove the fact that he died before the presumption would arise from absence.  In such cases it is necessary to prove his death as a fact, and when this can not be done by direct evidence it may be shown by proof of circumstances from which such death may be rightly and reasonably inferred.  A court or jury in such a case is not warranted in finding death as a fact from facts and circumstances in evidence which would be sufficient only to create a presumption of death after the lapse of seven years; but additional facts and circumstances may be shown which will warrant such a finding.  Some authorities have held that in order to justify a finding of the death of an absent person it must appear that when last seen or heard from he was in a situation of particular peril calculated to shorten or destroy life.

In *Eagle's Case* (1856), 3 Abb. Pr. 218, it was said that if it was attempted to apply the presumption short of seven years, special circumstances would necessarily have to be proved; as for example, that at last accounts the person was dangerously ill or in a weak state of health; was exposed to great perils of disease or accident; that he embarked on a vessel which has not since been heard from, though the length of the usual voyage has long since elapsed.  In all such cases the circumstances are sufficient to warrant the submission of the question of the fact of death to the determination of the court or jury trying such issue.

There are cases, however, which hold that circumstances other than that of particular peril calculated to destroy life may be sufficient to justify the inference of death.  *Tisdale* v. *Connecticut Mut. Life Ins. Co.* (1868), 26 Iowa 170, 96 Am. Dec. 136; *John Hancock Mut. Life Ins. Co.* v. *Moore* (1876), 34 Mich. 41; *Supreme Tent, etc.,* v. *Ethridge*

(1909), 43 Ind. App. 475, 87 N. E. 1049; *Lancaster* v. *Washington Life Ins. Co.* (1876), 62 Mo. 121; *Fidelity Mut. Life Assn.* v. *Mettler* (1901), 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922.

The case of *Tisdale* v. *Connecticut Mut. Life Ins. Co.*, *supra,* is a leading case on this point. The facts in that case are that the party on whose life the policy was issued was a married man about thirty years of age, of exemplary habits, excellent character, of fair business prospects, respectably connected, and of the most happy domestic relations. He had the fullest confidence of his friends and the entire affections of his wife, and was living in apparent happiness, with no apparent cause of discontent with his conditions which would have influenced him to break the domestic and social ties which bound him so pleasantly to his home. In the statement of the case it was said: "Visiting Chicago, * * * upon business, he was last seen by an acquaintance on the corner of Lake and Clarke streets in that city, about 3 o'clock p.m. of that day. No trace of him was afterward discovered, though his friends made every effort to find him and ascertain the cause of his mysterious disappearance. A large reward was offered through the newspapers for information that would lead to his discovery, either dead or in life. The detective police were employed to search for him without results. No tidings have been received of him, and not the faintest trace of the cause or manner of his disappearance has been discovered. He gave no intimation to any one of an intention to absent himself; and the latest declaration of his intentions was to the effect, that he expected to leave Chicago the day of his disappearance to join his wife at Dubuque. He owed no debts amounting to any considerable sum, and had made payment of some small ones about the day of his disappearance. His valise, containing clothing and other articles commonly carried by travelers, was found at his hotel. His bill there was unpaid." It was held by the Supreme Court, in reversing the

trial court, in that case that these facts were sufficient to warrant an inference of death. The court said in part: "Any facts or circumstances relating to the character, habits, condition, affections, attachments, prosperity and objects in life, which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration of such absence. A rule excluding such evidence would ignore the motives which prompt human actions, and forbid inquiry into them in order to explain the conduct of men."

We quite agree with the rule of law announced above, and the rule has been adopted by this court and applied in the case of *Supreme Tent, etc.,* v. *Ethridge, supra;* but the rule is not applicable to the state of facts disclosed by the evidence in this case.

Michael Broderick, the assured in this case, was an unmarried man at the time he left Indianapolis in the spring or early summer of 1901. Prior to that time he had been living with a married sister, Mrs. Catherine Lyons, in the city of Indianapolis for about three years, and had taken out the insurance policy in suit, in which she was named as beneficiary, about three months before he left. Mrs. Lyons paid the premiums until the commencement of this action. He left Indianapolis to go to St. Louis to work, because he believed that he could get better wages there. The evidence does not show that he ever intended to return to Indianapolis to reside. He obtained employment in St. Louis, and his sister in Indianapolis received letters from him regularly in response to those written by her until the fall of 1902, after which she received no further letters from him, and letters mailed to him at his former address were returned undelivered. In June or July of 1902 he came back to Indianapolis to see a sister, who had recently come over from Ireland. He stayed a few days on a visit, and then returned to St. Louis, after

which Mrs. Lyons received one letter and one postal card from him. His mother came over from Ireland in 1903, and went to the home of her daughter in Indianapolis, but she never saw her son Michael nor heard from him after she reached this country. Michael Broderick had two brothers and two sisters beside Mrs. Lyons, but it is not shown that any of his relatives received any letters from him except his mother and Mrs. Lyons. His mother testified that she received a letter from him the spring before she left Ireland, informing her that he was making money, and offering to send her money to pay her way over. This he never did, and it is not shown that he was contributing anything to the support of any relative. In 1905 Mrs. Lyons heard that her brother Michael was dead, and she went to St. Louis in that year and made an extended investigation. but was unable to learn anything of his whereabouts.

While the facts shown in this case would be sufficient, after a lapse of seven years, to raise the presumption of death, there are no special circumstances from which death may be inferred as a fact within the doctrine of the case of *Tisdale* v. *Connecticut Mut. Life Ins. Co., supra.* In this case the assured was not temporarily away from his family on business or pleasure at the time they lost trace of him, but he had been employed in St. Louis for eighteen months from that time. It was not shown that he had expressed any immediate intention of returning to Indianapolis, or that there was anything sudden or mysterious in his disappearance. On ceasing to hear from him, no immediate search was made to ascertain his whereabouts, the only effort to find him being made two or three years later. Nothing is shown as to his character, his habits, his affections, his attachments or his business and objects in life. We think that the evidence on this branch of the case is not sufficient to warrant the court in finding the death of the assured as a fact.

It is claimed by appellee that there is some direct evi-

dence of the death of Michael Broderick.  We are referred to the testimony of Jeremiah Sullivan, who testifies that he knew Michael Broderick; that his brother Pat Sullivan was in St. Louis, and knew Broderick while there; that this brother was at Indianapolis on a visit in 1902, and told the witness that Broderick was drowned in St. Louis.  Witness did not ask when or how Broderick was drowned, and his brother did not give him any of the details of his death and did not tell him how he obtained the information.  This brother came back to Indianapolis and died about a year later.  If this evidence is competent, it tends to establish the death of Broderick prior to 1902.

The evidence of Jeremiah Sullivan as to the facts stated to him by his brother is hearsay, and is incompetent, unless it falls within some of the exceptions to the rule excluding hearsay evidence.  Hearsay evidence is admissible to

8.   prove pedigree, and this embraces not only descent and relationship, but also facts as to birth, marriage and death, and the date when the events happened.  These facts may be proved by the declarations of deceased persons, who are shown to have been related by blood or marriage to the family of the person to whom the declarations relate. Such evidence is admitted on the ground that the reputation in the family as to such a fact, being a part of the family history, is admissible.

In some jurisdictions the rule is that hearsay evidence on questions of pedigree is admissible only in cases where some matter of pedigree is the direct subject of the suit; but in this State and in many other states it has been held that such declarations as to facts of family history are admissible, not only in litigation where the issue on which the evidence is offered directly involves a question of descent as pedigree, but also in cases where the question of pedigree is not directly involved.  *Collins* v. *Grantham* (1859), 12 Ind. 440; 1 Elliott, Evidence §370 and cases cited.

The weight of authority in this country seems to establish

the rule that the death of an individual, though disconnected from any question of pedigree and for whatever purpose sought to be established, may be proved by hearsay, subject to the same restrictions that are applicable in cases where matters of pedigree are involved. In order to render the declarations of a deceased person competent as to the death of an individual, it must appear that the declarant was a member of the family of the person whose death is the subject of inquiry, or that he was related to such family by blood or marriage. Accordingly it has been held that common reputation in the family of a person alleged to be dead is competent evidence of the death of such person, as well as of the time when such death occurred. *Morrill* v. *Foster* (1856), 33 N. H. 379; *American Life, etc., Co.* v. *Rosenagle* (1875), 77 Pa. St. 507; *Mason* v. *Fuller* (1872), 45 Vt. 29.

The rule as to the admission of hearsay evidence to prove the death of an individual extends only to the general reputation in the family of such person and among his kindred. *Anderson* v. *Parker* (1856), 6 Cal. 197; *Dupont* v. *Davis* (1872), 30 Wis. 170.

In one case the rule was relaxed when it appeared that the deceased had no known kindred. In that case, reputation among the acquaintances of the person alleged to be dead was admitted. *Ringhouse* v. *Keever* (1869), 49 Ill. 470.

The declarations of persons not members of the family of the person whose death is the subject of inquiry are not competent to prove the death of such person. *Jackson* v. *Browner* (1820), 18 Johns. 37; *Dudley* v. *Grayson* (1827), 6 Monroe (Ky.) 259; *Wilson* v. *Brownlee, Homer & Co.* (1867), 24 Ark. 586, 91 Am. Dec. 523.

Hearsay evidence on matters of pedigree is admitted to prove remote facts in family history, on the ground of necessity. 1 Elliott, Evidence §362 and cases cited.

When an occurrence has taken place in a family, such as a marriage, a birth, a death, or any other fact in reference to lineage or pedigree, and when members of the family afterwards speak of such facts and make declarations in reference thereto, such declarations so made are admissible after the death of the person making them to prove such facts. Such evidence generally pertains to remote facts which cannot be proved by living witnesses, and tends to prove the tradition and history of the family as to such facts.

The testimony of the witness Jeremiah Sullivan, as to the declaration of his brother, does not fall within the rule which permits hearsay evidence as to pedigree, for two reasons: The first reason is that it does not appear that the declarant was a member of the family of Michael Broderick, concerning whose death the declaration was made, or that he was related to the family either by blood or marriage.

12.

The second reason is that the fact concerning which the declaration was made was not one of remote origin and which was known only by reputation and family tradition. If Michael Broderick was dead, his death occurred so recently that all of the facts and circumstances tending to establish it were known to the members of his family who were living and who testified at the trial of this case. Under such a state of circumstances it has been held that it is not competent to prove a general reputation or belief in a family that one of its members is dead. *Vought* v. *Williams* (1887), 46 Hun 638; *Fidelity Mut. Life Assn.* v. *Mettler, supra.*

In the case last cited it was held that proof that there was a general belief and repute in the family of the assured to the effect that he was dead was not competent to establish the fact of his death. Speaking on the subject the court said: "But we do not think the evidence was competent to

establish the fact of death, under the circumstances of the case. To illustrate: in *Scott* v. *Ratliffe* [1831], 5 Pet. *81, [8 L. Ed. 54], it was held that the testimony of a witness that 'she was told that Mr. Madison was dead,' was admissible; and in *Secrist* v. *Green* [1865], 3 Wall. 744, 751, [18 L. Ed. 153], it was said 'it is competent to prove death and heirship by reputation.' But these and similar rulings and expressions in other cases must be taken in connection with the particular facts and circumstances. In this case no question of pedigree; of birth, marriage, or death as bearing on legitimacy, descent, or relationship; of ancient rights; of past events prior to controversy, was involved; nor was there any pretence that this was evidence of tradition, or historical fact, or general reputation in the community participated in by the family. If evidence of death it would be evidence of the particular fact on which recovery was sought, and inadmissible as such.''

The testimony of Jeremiah Sullivan, as to what his brother told him in reference to the death of assured, is hearsay, and does not fall within any of the recognized exceptions to the rule excluding such evidence.

If a proper objection had been made seasonably, this testimony should have been excluded; but this question is not saved or presented on this appeal. The record shows that this testimony was admitted without objection, and the question now arises as to whether or not hearsay evidence, which, on proper objection, should have been excluded, will be held sufficient to sustain a verdict or decision which is otherwise unsupported by evidence. If the evidence of Jeremiah Sullivan as to the statement of his brother tends to prove that Broderick died prior to the year 1902, then the weight of such evidence was for the court trying the issue of fact, and a finding of such death, based on such testimony, cannot be disturbed on appeal; but if such hearsay evidence is entirely without probative force, a verdict resting thereon cannot be upheld.

On the question just stated there is a conflict of authority in this country. The weight of authority seems to establish the rule that verdicts resulting from hearsay testimony may be sustained, where that evidence is permitted to go to the jury without objection. Its probative force under such circumstances being for the court or jury trying the issue of fact. *Sheibley* v. *Nelson* (1909), 84 Neb. 393, 121 N. W. 458; *Damon* v. *Carrol* (1895), 163 Mass. 404, 40 N. E. 185; *State, ex rel.,* v. *Cranney* (1902), 30 Wash. 594, 71 Pac. 50; *Goodall* v. *Norton* (1902), 88 Minn. 1, 92 N. W. 445; *Meyer* v. *Christopher* (1903), 176 Mo. 580, 75 S. W. 750; *Struth* v. *Decker* (1905), 100 Md. 368, 59 Atl. 727; *Metz* v. *Chicago, etc., R. Co.* (1911), 88 Neb. 459, 129 N. W. 994; *Kimmerle* v. *Farr* (1911), 189 Fed. 295, 111 C. C. A. 27; *Schlemmer* v. *Buffalo, etc., R. Co.* (1907), 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681.

On the other hand, a number of courts adhere to the rule that ordinary hearsay testimony is not only inadmissible, but wholly without probative value, and its introduction without objection does not give it any weight or force whatever in establishing a fact. *Eastlick* v. *Southern R. Co.* (1902), 116 Ga. 48, 42 S. E. 499; *State Bank* v. *Wooddy* (1850), 10 Ark. 638; *Lehman* v. *Frank* (1897), 46 N. Y. Supp. 761, 19 App. Div. 442.

The precise question here under consideration has never been passed on by either the Supreme or Appellate Courts of this State, but both courts frequently have held that secondary evidence, when admitted without objection, is sufficient to sustain a verdict. *Stockwell* v. *State, ex rel.* (1885), 101 Ind. 1; *Littler* v. *Robinson* (1906), 38 Ind. App. 104, 77 N. E. 1145; *Moore* v. *Hubbard* (1896), 15 Ind. App. 84, 42 N. E. 962; *Hommell* v. *Gamewell* (1838), 5 Blackf. 5; *Schenck* v. *Butsch* (1869), 32 Ind. 338.

In the case of *Stockwell* v. *State, ex rel., supra,* the court said: "It is next contended that the judgment should be reversed because the evidence does not show title in Har-

grove at the time he made the mortgage, and it is asked, with some emphasis, whether this court will hold, that title to real estate may be established by the affidavit of a party claiming to own it. To that inquiry we very readily answer, no, if any objection be made to such evidence. But if the parties will agree to waive the production of the proper evidence, and agree that such evidence shall take its place as competent evidence, then we know of no reason why the appellate courts should interfere and overthrow judgments and involve increased costs to the parties and to the public, because on such agreement the best evidence was not brought forward.''

''Parties have an undoubted right to try their case on illegal evidence, if they so desire; and if illegal evidence is admitted without objection, it is the right and duty of the jury to give it such consideration as it would be entitled to if legal evidence.'' *Birmingham R., etc., Co.* v. *Wildman* (1898), 119 Ala. 547, 24 South. 548.

If a party desires to make an objection of any kind to the admissibility of evidence, he should do so at the proper time. If the evidence is excluded, the party offering it may be able to supply the defect by other proof. It is not uncommon for testimony to be given which is not, in its nature, strictly competent on matters about which both parties realize there is no dispute. Such evidence is taken because the adverse party makes no objection, and there is no question as to the fact it tends to prove. He cannot after verdict obtain a new trial on the ground that the fact was not proved, because the evidence received in support of it was incompetent and should have been rejected on proper objection. The same rule holds good where incompetent or illegal evidence is admitted without objection to prove a fact in dispute. The party against whom such evidence is introduced may not take his chance of obtaining a favorable verdict at the hands of a jury on the evidence so admitted, and then, after an adverse verdict, obtain a new trial on the

ground that the verdict does not rest on any competent evidence.

The evidence of the witness Jeremiah Sullivan, although incompetent, tended to prove that the assured died prior to the year 1902. We cannot say, therefore, that the decision of the court is not sustained by sufficient evidence.

The court did not err in overruling appellant's motion for a new trial.

Judgment affirmed.

NOTE.—Reported in 98 N. E. 824. See, also, under (1) 13 Cyc. 299; 1913 Cyc. Ann. 1584; (2) 13 Cyc. 298; (4) 13 Cyc. 295; (5) 13 Cyc. 300, 301, 305; (6) 13 Cyc. 303, 307; (7) 13 Cyc. 305, 307; 25 Cyc. 945; (8) 16 Cyc. 1223, 1229; (9) 13 Cyc. 306; (11) 16 Cyc. 1224; (12) 13 Cyc. 306. As to the presumption of death generally and the burden of proof in rebuttal, see 104 Am. St. 198. As to the facts which must be shown in connection with absence to establish a presumption of death, see 7 Ann. Cas. 573; 14 Ann. Cas. 242.