# SEABOARD AIR LINE RAILWAY *v.* FLORIDA *ex rel* ELLIS, ATTORNEY GENERAL.

ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

Nos. 10, 11.    Argued March 2, 5, 1906.—Decided December 3, 1906.

*Atlantic Coast Line* v. *Florida ex rel. Ellis, ante,* p. 256, followed.

Where the record does not disclose why an order of a state railroad commission was made applicable only to certain local and intrastate rates, but the state law provides that rates so fixed are to be considered in all courts as *prima facie* just and reasonable, and the effect of the order was to equalize rates, this court will not hold the judgment of the highest court of the State sustaining the rate, was erroneous. A State may insist upon equality of intrastate railroad rates, the conditions being the same, without depriving the railroad company of its property without due process of law.

It will be presumed that a state railroad commission acts in fixing an intrastate railroad rate with full knowledge of the situation, and where the record does not disclose all the evidence, a rate sustained by the highest court of the State will not be held by this court to be confiscatory and depriving the railroad company of its property without due process of law where it appears by the report of the company that the rate exceeds the average rate received by the company during the previous year.

48 Florida,129 and 150, affirmed.

THESE cases resemble the one immediately preceding, in this, that review is sought in each of an award of a peremptory writ of mandamus by the Supreme Court of Florida to compel compliance with an order of the state railroad commission. In the first the court sustained an order of the commission, made June 25, 1903, and to go into effect July 1, 1903, prescribing rates on the Florida West Shore Railway, charged to be under the control and management of the plaintiff in error, 48 Florida, 129–152, the order being in these words: "It is hereby ordered and adjudged by the railroad commission of the State of Florida that the following schedule of freight tariffs shall be allowed and adopted for freight shipments over the

Seaboard Air Line Railway, to apply only to shipments from or destined to points on the Florida West Shore Railway, and from points on the Florida West Shore Railway to points on the Florida West Shore Railway, and the same shall be put into operation and be effective on the first day of July, A. D. 1903," and followed by the schedule; and in the second, it enforced the order of the commission in respect to phosphates (which was noticed by us in the opinion in the preceding case). 48 Florida, 150.

The proceedings before the commission are not disclosed, nor is there anything to show upon what the orders were based. There was notice and a hearing. And in the pleadings in the first case appear the contracts between the plaintiff in error and the Florida West Shore Railway.

In the Supreme Court the relator presented no testimony, relying upon the statutory presumption which attends an order of the commission. The defendant introduced the report which it had made to the railroad commission for the year ending June 30, 1904, and the report of the railroad commission to the Governor of the State for the year ending March 1, 1904, and upon these two reports the cases were considered by the Supreme Court.

*Mr. Hilary A. Herbert* and *Mr. George P. Raney*, with whom *Mr. Benjamin Micou* was on the brief, for plaintiff in error, in this case and in No. 9 argued simultaneously herewith.[1]

If this court sustains the court below then, by § 13 of the railroad commission law of Florida, for every failure to comply with any requirement of either of the two orders appealed from the injured person may bring suit and recover damages, court costs and lawyers' fees. In other words, the roads are at the mercy of any injured person who, under the phosphate order, has demanded of us to load and carry a ton of phosphate

---

[1] *Atlantic Coast Line* v. *Florida ex rel. Ellis, ante,* p. 256.

one mile and unload it for one cent, or load and carry it for five miles and then unload it, all for five cents.

The Seaboard Air Line Railway Company is not paying any dividends to its stockholders and its business in Florida is now conducted at rates so low that any material reduction would be unreasonable. And the order of the Florida commission in relation to phosphates is discriminatory, exceptional and partial as to the particular subject matter. On its face it is an irregular, unjust, and intolerable method of rate fixing.

The order makes the rate the same for one mile as for one hundred miles, and it is material because it applies to 16.43 per cent, of all the intrastate freight business of the appellant company in Florida.

All railroad literature with which we are familiar, whether originating in discussions before legislative bodies, railroad commissions, or courts, distinguishes between long and short hauls, since it is matter of common knowledge that no railroad carrier can transport freight at the same rate per ton per mile for long and short distances. Grading rates according to mileage may not, it is well recognized, secure perfectly fair compensation, but as the best and only practicable method of approximating justice we believe it may be called an unvarying custom.

It has been the custom of the railroad commission of Florida in other cases to follow this rule of grading rates with some reference to mileage as is shown by the record in both these cases. The commission, however, has selected phosphates to signalize a new departure from this just principle.

A railroad company may sometimes, for purposes of its own, do things which a commission cannot be justified in ordering. *Louisville & Nashville R. Co.* v. *Behlmer*, 175 U. S. 669. Just such an order as this, however, we cannot conceive that any railway company has ever prescribed for itself.

Appellant's rates on phosphates were, when altered, for long distances less than one cent per ton per mile, and more for shorter distances. If the rates between any points or for

any particular distances were too high, the board should have addressed itself to the task of reducing such rates, grading them according to distances; this because, as the court judicially knows, short hauls and deliveries cost more than long hauls. *Chicago, M. & St. P. R. Co.* v. *Tompkins,* 176 U. S. 168.

This court has jurisdiction to review on writ of error. The Florida law provides that: "All rules and regulations made and prescribed by said commissioners for the transportation of persons and property on the railroads subject to the provisions of this act or to prevent unjust discrimination or other abuses by them shall be deemed and held to be *prima facie* reasonable and just."

If the commission make a freight rate which, on its face, is *prima facie* unreasonable and unjust, certainly the Supreme Court of Florida could not take away from this court the right to pass upon this question by declaring that said rates were just and reasonable. If the Florida court had any such power as this all questioning of the conduct of a state commission would end with the state courts, and there would be no such thing as Federal jurisdiction over cases of this class.

In no case has such a sweeping straight rate as this been sustained. If upheld now, the decision will greatly simplify the duties of state boards in the future, but the rule here laid down seems to us to be totally inconsistent with the ideas of equity and fair play heretofore exacted of all bodies entrusted with the delicate and difficult task of dealing with the property rights of others. *Lake Shore* v. *Smith,* 173 U. S. 695, 696.

The order of the board must be taken as a whole, and if in any part of it it is unjust and without warrant, the whole must fall. The commission made this unfair order. There was no reason why it should not have made it just and fair. *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362; *Pacific Ry.* (C. C.), 64 Fed. Rep. 188.

When the state railroad commission in Mississippi sought to compel a telegraph company to keep open a particular office as part of a system, the state court held that the com-

pany could not be compelled to do business at a loss even in that one little office. *W. U. Tel. Co.* v. *Railroad Commission*, 74 Mississippi, 80.

This official report in evidence is uncontradicted. Altogether the Seaboard Air Line Railway constitutes a great system extending with many branches through Virginia, North Carolina, South Carolina, Alabama and Florida. Its present funded debt amounts in round numbers to some $61,000,000 besides its stock; whereas its total cost of construction is given in round numbers at some $7,000,000 less—$54,000,000. But this is by no means proof of overcapitalization. The fair conclusion is, there being no evidence to the contrary, that the system as a whole is worth not only the amount it actually cost in dollars and cents to construct and equip it, but the amount it cost its owners and at which it was capitalized; because, like other great systems of railways, it was extended into an undeveloped country and over desirable lines, upon the credit of the company, the company utilizing its credit by raising money on its bonds, which money was used in buying and building connecting roads, in operating them for a considerable period of time, during which they did not and could not be expected to pay interest on the money invested, the enterprising managers of the system in the meanwhile counting on the future development of the country for a return of their investments. See *Met. Trust Co.* v. *The Houston & T. C. R. Co.*, 90 Fed. Rep. 168.

In estimating the value of the property on which a railroad company is entitled to earn a return from tariff rates, the following authorities show that the cost of bare physical reproduction is too narrow a basis: *Milwaukee Electric R. & Light Co.* v. *Milwaukee*, 87 Fed. Rep. 577, 585; *Ames* v. *Union P. R. Co.*, 64 Fed. Rep. 165; *Smyth* v. *Ames*, 169 U. S. 547; *Chicago, B. & Q. R. Co.* v. *Dey*, 38 Fed. Rep. 656.

Railway companies should be allowed to earn something by way of dividends in addition to paying operating and maintaining expenses, interest on outstanding bonds, and taxes.

*Chicago & N. W. R. Co.* v. *Dey*, 35 Fed. Rep. 866; *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Louisville & N. R. Co.* v. *Brown*, 123 Fed. Rep. 951; *Southern Pacific* v. *Railroad Commissioners*, 78 Fed. Rep. 263.

*Mr. J. M. Barrs*, with whom *Mr. W. H. Ellis*, Attorney General of the State of Florida, was on the brief, for defendant in error in this case and in No. 9, argued simultaneously herewith:[1]

The authority of the railroad commissioners, under the constitution and laws of Florida, to make and enforce rates for the transportation of freight and passengers from points in Florida to points in Florida, is limited only by the provisions of the Federal Constitution against the taking of property without due process of law; the right of the State to enforce the orders of the state railroad commission by mandamus instituted originally in the Supreme Court of the State; the regularity of the proceeding before the railroad commission preliminary to the making of its orders; and the *prima facie* correctness, justice and validity of the orders of the commission, and the duty of the courts to enforce the orders of the commission, in the absence of an affirmative showing before the court made by the defendant in a mandamus proceeding sufficient to overcome the *prima facie* validity of the orders of the commission,—are, we understand, not questioned by the plaintiff in error, and are entirely manifest by reference to the constitution and laws of Florida, and cannot be reviewed by this court. Florida Laws, 1899, ch. 4700, p. 76.

This court is precluded from reviewing the judgment of the Supreme Court of Florida on the second assignment of error. *Tripp* v. *Santa Rosa St. R. Co.;* 144 U. S. 126; *Iowa Cent. R. Co.* v. *Iowa*, 160 U. S. 389; *Grand Rapids, etc., R. Co.* v. *Butler*, 159 U. S. 87; *Wood* v. *Brady*, 150 U. S. 18; *Gibson* v. *Mississippi*, 162 U. S. 565; *French* v. *Hopkins*, 124 U. S. 524; *Læber* v.

---

[1] See p. 256, *ante.*

*Schrœder,* 149 U. S. 580; *Thorington* v. *Montgomery,* 147 U. S. 490; *McNulty* v. *California,* 149 U. S. 645; *Northern Pacific R. Co.* v. *Patterson,* 154 U. S. 130; *O'Neill* v. *Vermont,* 144 U. S. 323; *Hibbin* v. *Smith,* 191 U. S. 310; *Smith* v. *Indiana,* 191 U. S. 138..

The third, fourth, fifth, sixth and seventh assignments of error are in effect the same, and all are based on the final decision of the Supreme Court of Florida. The eighth is a blanket assignment which covers all the others. No Federal question of law is raised by any of the assignments. The Supreme Court of Florida found the facts as stated in its opinion and that finding is conclusive in this court. *Hall* v. *Jordan,* 15 Wall. 393; *Carpenter* v. *Williams,* 9 Wall. 785; *Republican River Bridge Co.* v. *Kansas Pac. R. Co.,* 92 U. S. 315; *Martin* v. *Marks,* 97 U. S. 345; *Kenney* v. *Effinger,* 115 U. S. 577; *Quimby* v. *Boyd,* 128 U. S. 488; *Dower* v. *Richards,* 151 U. S. 658; *Hedrick* v. *Atchison &c. R. Co.,* 167 U. S. 673; *Atchison &c. R. Co.* v. *Matthews,* 174 U. S. 96; *Backus* v. *Fort St. Union Depot Co.,* 169 U. S. 557; *Egan* v. *Hart,* 165 U. S. 188; *In re Buchanan,* 158 U. S. 31; *Chicago &c. R. Co.* v. *Chicago,* 166 U. S. 226; *Missouri &c. R. Co.* v. *Haber,* 169 U. S. 513.

The Supreme Court of Florida, in their original jurisdiction of mandamus cases, are the judges of the fact as well as of the law. *Columbia County* v. *Suwannee County,* 21 Florida, 1.

The Supreme Court of Florida in their opinion in this case, did not enunciate any questionable principles of law. The opinion is limited almost, if not quite, to their findings of facts based on the testimony of the plaintiff in error before them.

Plaintiff in error has not shown sufficient facts to reverse the judgment of the Supreme Court of Florida, if the court should decide, contrary to our contention, and that the points raised in the case are questions of mixed law and fact and properly reviewable by this court. *Chicago, M. & St. P. R. Co.* v. *Minnesota,* 134 U. S. 418; *Chicago & G. T. R. Co.* v. *Wellman,* 143 U. S. 339; *Reagan* v. *Farmers' Loan & T. Co.,* 154 U. S. 362; *St. Louis & S. F. R. Co.* v. *Gill,* 156 U. S. 649; *Covington*

& L. Tr. Co. v. Sanford, 164 U. S. 578; Smyth v. Ames, 169
U. S. 466; San Diego L. & T. Co. v. Jasper, 189 U. S. 439.

If this court could go back of the findings of fact of the
Supreme Court of Florida, it would be found that the Seaboard
Air Line Railway introduced in evidence to sustain its plea or
return absolutely nothing even tending to sustain the same,
confining itself to the introduction in evidence of two printed
reports, the one being a report of that company filed with the
Florida Railroad Commission for the year ending June 30,
1904, and the other the report of the state railroad com-
mission for the year ending March 1, 1904. Neither of those
reports have the slightest relevancy to the issue in the cause.

MR. JUSTICE BREWER, after making the foregoing statement,
delivered the opinion of the court.

There are no special findings of facts in these cases, and only
from an examination of the opinions filed by the Supreme
Court can we ascertain what its conclusions were or upon what
its judgments were based. It may well be doubted whether
a railroad company can rely, as evidence in its own behalf,
upon a report made and filed by it, and while a report of the
railroad commission to the Governor may undoubtedly be
used against it in an application made at its instance to secure
compliance with one of its orders, yet there is little in its report
which throws light upon the questions in these cases.

Referring to the first case, in which is presented the reason-
ableness of an order made by the commission respecting local
rates for business on, to or from the Florida West Shore Rail-
way, we find it stated in the brief of the plaintiff in error that
the railroad commission on December 22, 1903, made an order,
to go into effect July 1, 1904, reducing local freight rates
generally; that from this order no appeal was taken; that in
November, 1903, an order was made reducing by ten per cent
rates on certain freights going over two or more roads, and
that from such order no appeal was taken. These are the

orders referred to in the report of the commission to the Governor. But the order in controversy was made on June 25, 1903, to go into effect July 1, 1903, and is applicable solely to the Florida West Shore road. Now, whether this order of June 25, 1903, was simply operative to make the rates on the Florida West Shore road the same as those then obtaining generally in the State, or whether it made them higher or lower than such rates, does not appear. For some reason not disclosed the order touched only the local freight rates to and from the Florida West Shore Railway and over the Seaboard Air Line Railway. Even if the total receipts by the latter company from local freight rates were insufficient to meet what could properly be cast as a burden upon that business, such insufficiency would not justify it in an inequality of rates between different parts of the State, in one part too high and in the other too low. The State might properly insist that there should be equality in the rates—the conditions being the same—and if nothing more was accomplished by the order of the commission than to establish such equality we cannot hold that the judgment of the Supreme Court was erroneous.

With reference to the second of these cases, the order made by the railroad commission is said by the plaintiff in error to be an "irregular, unjust and unreliable method of rate fixing," and this upon the theory that the order makes the rate per mile the same for any distance, whether one mile or a hundred miles. It appears that 16.43 per cent of all the local freight business of the company in Florida comes from the carrying of phosphates, and reference is made to several cases in which the courts have noticed the fact that the cost of moving local freight is greater than that of moving through freight, and the reasons for the difference. But evidently counsel misinterpret the order of the railroad commission. It does not fix the rate at one cent per ton per mile. It simply provides that it shall not exceed one cent per ton per mile, prescribes a maximum which may be reduced by the railway company, and if distance

demands a reduction the company may and doubtless will make it. In addition it must be borne in mind that it is to be presumed that the railroad commission acted with full knowledge of the situation; that phosphates were in Florida possibly carried a long distance, the place of mining being far from the place of actual use or preparation for use. Further, when we turn to the report of the railroad company (which of course. is evidence against it) we find that the company's average freight receipt per ton per mile in the State of Florida was $8 \frac{15}{100}$ mills; so that the rate authorized for phosphates was nearly two mills per ton larger than such average. Under these circumstances it is impossible to say that there was error in the conclusions of the Supreme Court of the State, and its judgments are

*Affirmed.*