[APRIL TERM, 1931]

IDEAL BAKERY v. SCHRYVER
(No. 1695; May 12, 1931; 299 Pac. 284)

For the plaintiff in error there was a brief and oral argument by *D. R. Higley,* of Rawlins, Wyoming.

For defendant in error there was a brief and oral argument by *John W. Henderson*, of Greeley, Colorado.

*D. L. Higley,* in reply.

RINER, Justice.

These proceedings in error were brought by the plaintiff in error Ideal Bakery, hereinafter usually referred to as the "employer", to review an award made by the District Court of Carbon County under the Workmen's Compensation Law of Wyoming, in favor of Alida A. Schryver, his wife, and Dorothy E. Schryver, the minor child of one H. H. Schryver, who died April 16, 1930, at Rawlins, Wyoming.

The plaintiff in error is a co-partnership, wherein Fritz Henderson and A. H. Good are the only persons interested. During the months of March and April, 1930, they were engaged in conducting a bakery business at Rawlins, and Harry H. Schryver, subsequently generally mentioned as the "workman", was employed by them as head pastry man, working nights. He performed his duties in a workroom where machines driven by electric motors were located for making bread and pastry.

In the order of award the trial court found, among other things, that:

"The said H. H. Schryver was injured on or about the 26th day of March, 1930, at Rawlins, Carbon County, Wyoming, while in the employ of the Ideal Bakery; that said injury consisted of a cut on the second finger of his right hand at the first joint, incurred while in the employment of his duties as baker; that said injury resulted in blood poison from which he died on April 16, 1930. Said Ideal Bakery being a bakery kitchen in which power machinery is used."

The claim upon which the award was made was presented by the surviving wife upon behalf of herself and the child of the injured workman. In criticism of the District Court's order in the premises, the employer urges that there was no competent evidence before the court submitted by the wife showing that the injury occurred in the course of the employment of the workman. This contention requires examination of the proofs shown by the record. Briefly, the facts of the case material to be considered in disposing of the contention, are these:

The workman, who had previously been employed by the plaintiff in error, started to work at the bakery again about the 20th of March, 1930. His wife came to Rawlins on the 29th of that month, her husband meeting her at the train and at that time being apparently in good health. On the trial she testified, however, without objection concerning her husband, that:

"He told me Sunday when he laid down to rest after I came Saturday evening that he had cut his finger down at the bakery, but it didn't amount to anything."

The same statement was again elicited on cross-examination by counsel for the employer, as also was her testimony, that while at the hospital Mr. Good asked her husband how his finger was hurt, and the latter responded:

"He didn't remember just the way he did hurt his finger, but he cut his finger down at the bakery, but he said he didn't notice it was cut until he was almost ready to go off shift, and when he washed his hands he noticed his finger was cut."

Schryver continued at his work despite the injury, but on the Wednesday following, April 2nd, according to the wife's testimony—also received without objection:

"He just said he had a boil on his arm, or he thought he was getting a boil on his arm, and I asked him if his finger hurt him and he said, no, it didn't."

He worked that night and the next, but on April 4th, his arm having become very painful, he consulted a physician, who found that there was a laceration of the right middle finger which showed an inflammatory reaction and swelling. The workman's general condition of health gradually grew worse, and on the night of April 5th, he was taken to the local hospital, where he subsequently died of septicemia, or "general blood poisoning." Shortly after the death occurred, the undertaker who took charge asked one of the partners, Mr. Good, what the cause of the death was, and the latter replied: "Blood poison," and "that probably it resulted from infection at the bakery." On the same day at the hospital, Good also told Mrs. Schryver and a relative that "Harry cut his hand at the bakery on a can while he was at work."

Prior to Schryver's death, the partners made an investigation of the accident and one of them went to the hospital to get information on the matter from the workman, this data being gathered for the purpose of making a report under the Workmen's Compensation Law of this state. Thereupon Anderson made and filed an "Employer's Report of Accident" on a printed form furnished by state officials for that purpose. The other partner, Good, looked it over and said it was "all right." In that report, among other statements, appear the following:

"Q. (5) What was the nature of the injury. A. Scratch on finger causing blood poison.
"Q. (6) State to what extent injury disables the workman: Temporary total disability        Yes
                                                        (Disability

which cause loss of time but leaves no permanent defect).
Remarks: Mr. Schryver is still at Hospital.

"Q. (7) State the length of time the disability has lasted. A. Since 5th of April.

"Q. (8) Did the accident occur while the workman was engaged in the duties of his employment? A. Yes.

"Q. (9) Did it grow out of his employment? A. Yes.

"Q. (12) Was the accident due solely to the culpable negligence of the injured employee? A. No.

"Q. (16) What is your information as to whether the injured workman will claim compensation under the Workmen's Compensation Act? A. Yes.

"Q. (17) Will the employer dispute the workman's claim if made in accordance with Workmen's Compensation Act, State of Wyoming? A. No."

The report was sworn to before the clerk of the District Court by Anderson, his affidavit stating that he had "read the foregoing statement contained in the foregoing questions and answers, and that the facts therein set forth are true." The file mark shows it to have been filed on the 16th of April, 1930, in the office of the said clerk.

On May 8th following, as already indicated, Alida A. Schryver, as one of the surviving dependents of the workman, duly filed her claim for compensation as provided by law, and in it, describing the accident, she stated that: "Employee, now deceased, was pastry baker, working nights, for Fritz Anderson and A. F. Good, at the Ideal Bakery, a bakery kitchen using power machinery. While opening a fruit can employee cut his second finger of his right hand at the first joint." The claim then described the treatment given the injury and the subsequent death of the employee from blood poisoning.

Thereafter, on June 4, 1930, upon leave of court first obtained, the employer, by A. F. Good copartner, filed in the District Court of Carbon County an amended report, wherein it was then stated in response to question No. 8, supra: "No definite information available but employer believes and alleged it did not." And to question No. 9:

"No, to best knowledge of employer." And to each of questions No. 16 and No. 17: "Yes." This report was also positively verified by Good. On the trial, which occurred July 7, 1930, both partners testified, concerning the first report filed, that they did not understand the effect of the questions answered therein or the nature of the Wyoming Compensation Law, and that they did not know about the facts of the injury, as detailed in that report. At the conclusion of Anderson's testimony, he was interrogated by the trial court and responded as follows:

"Q. I understand that you thought at first that some insurance company would pay whatever was to be paid on this?
"A. I thought it was a form of insurance, yes.
"Q. And, thinking that, you answered that he was injured in your employment and that it grew out of the employment, and then, when you found that it came out of your payments into the compensation fund you changed your mind on that proposition, did you?
"A. Yes."

Particularizing the criticism of the award made by the employer, it is said that the trial court could not regard the testimony of Mrs. Schryver concerning the statements mentioned above as made to her by her husband relating to the injury he sustained. It is true that such statements were hearsay, but they were received by the court without the slightest objection on the part of the employer. Not only that, but, as we have seen, substantially the same testimony was again brought out on cross-examination by employer's counsel, and no motion to strike it from the record was made. Under such circumstances the court had a right to consider the testimony and to give it the weight to which it was entitled.

In Kelly v. Dellman, 38 Wyo. 346, 266 Pac. 1058, 1059, this court said, speaking of the introduction of hearsay testimony without objection:

"However that may be, we recognize the rule that while incompetent testimony, introduced in evidence without objection, may be considered the triers of fact may give it such weight as they deem it entitled. Weidenhoft, et al. v. Primm, 16 Wyo. 359, 94 Pac. 453; Jones v. Plummer, 137 Mo. App. 346; Richard I. Biggs & Co. v. E. Longhammer & Son, et al., 103 Md. 94, 63 Atl. 198."

Many other courts have taken the same view. For example, in Stewart v. St. Louis-San Francisco Ry. Co., 262 S. W. (Mo. App.) 440, 443, it is said:

"But when hearsay goes in without objection or is brought out on cross-examination, it goes for what it is worth, and will support a judgment. Sullivan v. Mo. Pac., (Mo. App.) 211 S. W. 903; Fred Harvey v. Comegys, (Tex. Civ. App.) 233 S. W. 601."

In Streeter's Dependents v. Hunter, 93 Vt. 483, 108 Atl. 394, 395, a Workmen's Compensation case presenting a situation somewhat resembling that at bar, the court remarked:

"To prove that the accident occurred on the 17th, certain hearsay evidence was admitted; but all this came in without objection, and was therefore for consideration."

So, in Mercantile Trust Co. v. Sunset Road Oil Co., 176 Cal. 461, 168 Pac. 1037, 1039, this language was used:

"The evidence tending to show presentation of coupons to the trustee for payment might, perhaps, if objected to, have been excluded as hearsay. Such objection was not, however, made, and it is well settled that incompetent evidence admitted without objection is to be regarded as sufficient to establish the fact. McCloud v. O'Neall, 16 Cal. 392; Curiac v. Packard, 29 Cal. 194, 197; Janson v. Brooks, 29 Cal. 214, 223; Williams v. Hawley, 144 Cal. 97, 102, 77 Pac. 762."

The Supreme Court of Nebraska, speaking of hearsay evidence introduced in the course of a jury trial in Sheibley v. Nelson, 84 Neb. 393, 121 N. W. 458, 460, said:

"Verdicts may result from hearsay testimony and be sustained where that evidence is permitted without objection to go to the jury; its probative force under those circumstances being for the jury, and not the court, to determine. Sections 330, 331, 1 Elliott on Evidence; Damon v. Carroll, 163 Mass. 404, 40 N. E. 185; State ex rel. Race v. Crannery, 30 Wash. 594, 71 Pac. 50; Goodall v. Norton, 88 Minn. 1, 92 N. W. 445; Lindquist v. Dickson, 98 Minn. 369, 107 N. W. 958, 6 L. R. A. (N. S.) 729, 8 Ann. Cas. 1024."

Pointing out that while some courts take a different attitude on the question, the Appellate Court of Indiana, in Metropolitan Life Ins. Co. v. Lyons, 50 Ind. App. 534, 98 N. E. 824, 828, citing many authorities, nevertheless said:

"The weight of authority seems to establish the rule that verdicts resulting from hearsay testimony may be sustained where that evidence is permitted to go to the jury without objection; its probative force under such circumstances being for the court or jury trying the issue of fact."

Following the ruling last cited, the same court, in Hege & Co. v. Tompkins, 69 Ind. App. 273, 121 N. E. 677, 679, a frequently cited case under the Indiana Workmen's Compensation Act, discussed the point we are considering as follows:

"Appellants contend that the statements made by the deceased to the several witnesses as to the cause and manner of his injury are hearsay, and therefore incompetent as evidence. Appellees admit that such statements are hearsay, but assert that, under the state of the record, the industrial board had the right to consider the same regardless of such fact. It is firmly settled in this state that a material fact at issue may be established by hearsay evidence, where the same is admitted without objection. Metro-

politan Life Ins. Co. v. Lyons (1912) 50 Ind. App. 534, 98 N. E. 824. In that case the court said:

" 'The party against whom such evidence is introduced may not take his chance of obtaining a favorable verdict at the hands of the jury on the evidence so admitted, and then, after an adverse verdict, obtain a new trial on the ground that the verdict does not rest on any competent evidence.'

"The above case has been cited with approval in Wagner v. Meyer (1913) 53 Ind. App. 223, 101 N. E. 397; Buttz v. Warren Mach. Co. (1913) 55 Ind. App. 347, 103 N. E. 812; Baxter v. Moore (1914) 56 Ind. App. 472, 105 N. E. 588.

"The reasons for adopting the above rule in ordinary civil actions apply with even greater force in hearings before the industrial board. It is evidently the intent of the Workmen's Compensation Act that, by concise and plain summary proceedings, controversies arising under the same should be promptly adjusted by a simplified procedure, unhampered by the more technical forms and intervening steps which sometimes incumber and delay ordinary civil actions. * * * To deny the application of the rule relating to hearsay evidence, as stated and applied in the case of Metropolitan Life Ins. Co. v. Lyons, supra, in proceedings before the industrial board, would be to violate the spirit of the act by applying a more rigid rule with reference to hearsay evidence in such proceedings than is applied in civil actions. We see nothing unreasonable or harmful in applying the rule announced to proceedings before the industrial board, as it would only require that a party object to hearsay evidence when offered, in order to overcome the presumption which would otherwise arise that he consented to its admission and consideration by the board. In this case the hearsay evidence was admitted without objection, and the board, therefore, had a right to consider the same, and give it such probative force as it might believe it merited, under all the attendant facts and circumstances."

To the same effect see also: Reid v. Automatic Electric Washer Co., 189 Iowa 964, 179 N. W. 323, 330; State ex rel. Race, et al. v. Cranney, 30 Wash. 594, 71 Pac. 50; Hays v. Lemoine, 156 Ala. 465, 47 So. 97; American Surety Co. v. Sowers, 50 Ind. App. 534, 98 N. E. 824; Struth, et al.

v. Decker, et al., 100 Md. 368, 59 Atl. 727; Covell v. Western Union Telegraph Co., 164 Mo. App. 630, 147 S. W. 555; Wilkinson v. St. Louis etc. Ry. Co., 146 Mo. App. 711, 125 S. W. 544, and cases cited; State v. Dunn, 53 Ore. 304, 99 Pac. 278, 100 Pac. 258; Speed v. Sadberry, 190 S. W. (Tex. Civ. App.) 781; T. B. Jones & Co. v. Pelly, 128 S. W. (Ky.) 305; Halbren v. Goldberg, et al., 175 N. Y. S. 474; Croker v. Hotchkiss etc. Co., 107 Misc. Rep. 626, 177 N. Y. S. 189; Shide v. Burns, 163 Ark. 27, 259 S. W. 372; Laster v. R. & V. Motor Co., 219 Mo. App. 211, 269 S. W. 665.

It will be recalled from what has already been said, that the statements of her husband concerning the injuries suffered were made to Mrs. Schryver before any claim for compensation was presented, and even before any report of the accident was filed by the employer. When the trial occurred, the workman was dead. While conceding that the law of England concerning the admissibility in evidence of such statements of a deceased person recognizes the general rule regarding hearsay testimony when objected to, yet Mellish, L. J., in Sugden v. St. Leonards, L. R. 1 P. D. 154, said:

"I have not the least hesitation in saying that I think it would be a highly desirable improvement in the law if the rule was that all statements, made by persons who are dead, respecting matters of which they had a personal knowledge, and made 'ante litem motam', should be admitted. There is no doubt that by rejecting such evidence we do reject a most valuable source of evidence * * * (But) it appears to me that it would be better to leave it to the Legislature to make the improvement, which in my opinion ought to be made, in our present rules with regard to the admissibility of evidence of that description."

So Herschell, L. C., in Woodward v. Goulstone, L. R. 11 App. Cas. 469, declared:

"No doubt there are many countries, and indeed Scotland is one of them, where the law permits declarations of per-

sons who are dead to be given in evidence in all cases where they were made under circumstances in which such evidence ought properly to have been admitted if the person had been living; and there is much to be said for that law as compared with our own.''

Massachusetts, in 1920, adopted a statute reading:

''A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the Court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant.'' G. L. C. 233, Sec. 65.

Commenting on this law, Mr. Wigmore (3 Wigmore on Evidence (2nd Ed.) pages 326-7) says that it ''has been found to work well; and its general adoption would be an important improvement in the law of Evidence.''

While, as said by Lord Mellish, such an exception as this is preferably a matter for legislative consideration, still we are the more ready to approve consideration by the trial court of these unobjected-to statements when they are recognized by such eminent authorities as of intrinsic worth.

It is said that the admissions of the partner Good were not based upon or supported by any facts appearing in the case, and were not competent evidence of the cause of the injury. But admissions, as said in 3 Jones Commentaries on Evidence (2nd Ed.) § 1071, ''are not rejected for the reason that the declarant may have had no personal knowledge of the facts admitted; or because made during intoxication; because they are drawn out by a false suggestion; or because they may have been given under legal compulsion, as in answer to irrelevant questions or to questions which might have been objected to as incompetent, or in answer to interrogatories irregularly taken, or because there has been no opportunity to explain. In all such cases the objection goes to the weight to be given to the admission and not to the question of competency.''

The partner Good himself testified that he made an investigation to ascertain the cause of the injury to the workman, while the latter was still living. After doing so, he made the statement that Schryver had "cut his hand at the bakery on a can while he was at work." The fact that thereafter, by his amended report of the accident and by his subsequent testimony at the trial, he undertook to discredit his former statement, simply went before the trial court to be weighed with all the other evidence in the case.

There is nothing in the contention that there was collusion between Mrs. Schryver and Good, which led to his making the statements he did. The record shows the admissions to have been voluntarily made by him and without any question or suggestion coming from the workman's wife.

It was assigned as error in the employer's motion for a new trial, that the court received in evidence the first report of accident filed in the matter by the employer. While this claim is not urged in the brief of plaintiff in error and hence is waived, it is insisted that the report contained no admission sufficient to make it proof of an injury under the Workmen's Compensation Act, that it contained merely conclusions, was not based on facts known as to the injury, and was made under misapprehension of the law and the effect of the answers thereunder.

An examination of the authorities establishes that ordinarily the report filed by the employer concerning an accident and the injury suffered thereby in Workmen's Compensation proceedings is admissible in evidence unless forbidden by statute, as is the case under some circumstances in some states. In Reck v. Whittlesberger, 181 Mich. 463, 148 N. W. 247, 250, Ann. Cas. 1916C, 771, the rule adopted in that jurisdiction was stated to be:

"We think that such reports from the employer, where all sources of information are at his command when the reports are made, and he has had ample opportunity to satisfy himself of the facts, can properly be taken as an admission,

and, at least, as *prima facie* evidence, that such accident and injury occurred as reported.''

Of similar purport are: Eggers Veneer Seating Co. v. Industrial Commission, 168 Wisc. 377, 170 N. W. 280; First National Bank v. Industrial Commission, 161 Wisc. 526, 154 N. W. 847.

In Little Fay Oil Co. v. Stanley, 90 Okla. 265, 217 Pac. 377, 378, it was contended that the report of the injury dealing with a fact in issue was made by an officer of the company through a misapprehension of the facts and upon hearsay statements given him, and hence that there was no competent evidence to justify the award. Rejecting this contention, the court used the following language:

''The fact that the statements contained in the report of the employer were made by a person who did not have personal knowledge of the facts did not render the admission made in the report incompetent as evidence, but simply went to the weight to be given the admission as evidence. * * *

''The testimony upon the hearing tending to show that Stanley was not employed by the Little Fay Oil Company did not nullify the admission contained in the report, nor render it incompetent; but it was the province of the Industrial Commission to consider the admission in connection with the evidence given upon the hearing and to give such the weight it deserved. It cannot be said that there was an entire lack of testimony to support the finding of the commission, and in these circumstances we must decline to disturb the award made by the commission.''

Likewise in Ross' Case, 124 Me. 107, 126 Atl. 484, 485, we find the point now under consideration discussed. The following excerpt sufficiently shows the view taken by the court:

''Every Compensation Act employer, whose employee is accidently injured in and by reason of his employment, is under the duty of reporting to the Industrial Accident Commission. R. S., c. 50, § 41, as amended by Laws 1919,

c. 238. The treasurer of the Sheehy Company, who also was its manager, reported in the pending instance, saying in this way:

" 'Injured, received slight cut on third finger, left hand, while working in finishing room; painted it with iodine several times, but infection set in, causing lockjaw resulting in death February 20, 1923.'

"That report, being adverse to the interest of the employer, rightly had place in the evidence. Jacque's Case, 121 Me. 353, 117 A. 306. The employer's insurance carrier undertook to prove, or to raise an inference if it could be, that the actual fact was at variance with the report. The carrier called the treasurer, who testified that the report was wholly based on what, on seeing the scratch and speaking to Ross about it, the latter told him, and the rumor that soon was prevalent concerning Ross' death.

"The credibleness and significance of the evidence were for the trier of fact. Mailman's Case, 118 Me. 173, 106 A. 606. The explanatory testimony, had it been accepted, would have discredited the report. The report, being believed, notwithstanding its contradiction, justified the finding, regardless of any circumstantial proof. In cases of this kind, where no fraud appears, the volume of the evidence, or how it might be esteemed elsewhere, is not examinable. The test is simply whether some competent evidence supports the finding. R. S. c. 50, § 34, as amended by Laws 1919, c. 238; Mailman's Case, supra."

See also Seaboard Airline Ry. Co. v. State, 203 U. S. 261, 27 Sup. Ct. Rep. 109, 51 L. Ed. 175.

Under these authorities it is plain that we are asked to re-weigh all the evidence in the case and to substitute our own conclusions as triers of fact for those of the trial court. This we cannot do. Considering the admitted physical facts of the case, i. e. that the workman was engaged in his occupation practically all night, obtaining his rest and sleep on the following day; that he was injured by a laceration of his finger, that he ultimately died through the effects of that injury through blood poisoning, and taking these facts in conjunction with the oral and written admissions of both partners under the circumstances in which

these admissions were made, we are not prepared to say that there was no competent evidence before the trial court upon which it might properly base the order under review. The only real misapprehension under which the employer appeared to be laboring, as shown by the trial court's examination of the witness quoted above, was as to who was required to make the payments on account of the award.

It is further urged, in substance, that even conceding that the workman was injured in the manner admitted by Good, and as claimed by Mrs. Schryver, the injury was not one within the purview of the Workmen's Compensation Law, and that only injuries sustained through the use of power machinery are compensable under the law as applied to bakeries. With this contention, also, we are unable to agree.

Section 4316 of Chapter 258 (the Workmen's Compensation Act), Comp. St. of Wyo. 1920, provides in part:

"Compensation herein provided for shall be payable to persons injured in extra-hazardous employments, as herein defined, or the dependent families of such, as die, as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee."

Section 4318 of the same chapter, as amended by Chapter 46, Laws of 1929, so far as pertinent here, reads:

"The extra-hazardous occupations to which this Chapter is applicable are as follows: * * * restaurant and bakery kitchens where power machinery is used, * * * each of which employments is hereby determined to be extra-hazardous and in which, from the nature, conditions or means of prosecution of the work therein requires risks to the life and limb of the workmen engaged therein are inherent, necessary or substantially unavoidable."

And subdivision "1" of Section 4321 of said chapter contains the following provision:

"The words 'injuries sustained in extra-hazardous employment,' as used in this chapter shall include death resulting from injury, and injuries to employees, as a result of their employment and while at work in or about the premises occupied, used or controlled by the employer."

It will be observed that the legislature did not say that compensable injuries sustained in extra-hazardous employment were only those which were caused by one of the risks which induced the legislature to include those engaged in such employment as within the operation of the Act. We are not disposed to limit the language of the statute by reading into it provisions which are not there. The law certainly includes injuries suffered through the performance of all duties of the employment, whether main or incidental thereto but called for by it. If we premise that the workman cut his finger on a tin can while at his work in the bakery, it seems too plain for argument that the injury came to him as a result of his employment and "while at work in or about the premises occupied, used or controlled by the employer." Our conclusion on this point is quite in harmony with those reached by other courts where, under statutes generally similar in form, a like contention has been pressed.

In Larsen v. Paine Drug Co., 218 N. Y. 252, 112 N. E. 725, 726, a frequently cited decision concerning this question, also a case under the Workmen's Compensation Law of New York, it was there urged in criticism of an award that it did not appear "second, that the deceased at the time of his death was engaged in any work in the course of or connected with such hazardous employment, even though said business was carried on by the employer." Declining to approve this view, the court said, in affirming the award:

"Appellant's second proposition means that a person engaged generally in an employment which has been defined as hazardous cannot recover compensation for injuries received while performing some act not immediately connected with what might be deemed the hazardous and character-

istic feature of the business, although such act was incident to the employment and necessary in prosecuting and carrying forward the business. To illustrate, in the present case it means that no award can be made because the employe was injured while building a shelf for use in the business, rather than engaged in the immediate process of manufacturing drugs and chemicals, although such shelf was entirely necessary in the prosecution of the business. We think this is too narrow a view of the statute, and would lead to limitations upon its application which were not intended or anticipated by the Legislature. It is not necessary to attempt to lay down a final and universal rule on that subject. We feel perfectly secure, however, in holding that where, as in this case, an employe is injured while performing an act which is fairly incidental to the prosecution of a business and appropriate in carrying it forward and providing for its needs, he or his dependents are not to be barred from recovery because such act is not a step wholly embraced in the precise and characteristic process or operation which has been made the basis of the group in which employment is claimed.''

The ruling thus announced has been repeatedly followed in New York state. To mention a few cases only, see: Fogarty v. National Biscuit Co., 221 N. Y. 20, 116 N. E. 346; Dose v. Moehle Lithographic Co., 221 N. Y. 401, 117 N. E. 616; McNally v. Diamond Mills Paper Co., 223 N. Y. 83, 119 N. E. 242.

In Tierney v. Telephone Co., 114 Kans. 706, 220 Pac. 190, 191, the plaintiff was a young man who ordinarily charged batteries in the central telephone exchange. He went with a lineman in the company's automobile to a nearby city. During the journey they halted at intervals, when the lineman climbed telephone poles and made tests, connecting with some central exchange. While cranking the car, the plaintiff had his arm broken by the ''kick back'' of the engine. Compensation was refused, when asked. In defendant's appeal from the award made, the chief claim made was that the accident and injury and defendant's liability thereunder were not governed by the Workmen's Compensation Act. Affirming the award, the court said:

"But it is argued that he was not engaged in electrical work, wire repairing, or operating a telephone line, when the accident occurred—that he was merely cranking a Ford car, the hazard of which undertaking is the same in all walks of life, and not related in any way to the hazards of industrial accidents in the telephone business. The Compensation Act declares certain occupations to be hazardous and imposes a compensatory charge upon such business for injuries sustained by workmen engaged therein, with or without fault of employer or employee, where such injuries arise from the employment and because of it. The compensation thus allowed is not restricted to injuries which flow from the hazardous features of the employment, but to all injuries which are incidentally sustained in such employment, whether the injuries flow from some peculiar hazard of the business or not."

This decision was approved and followed in the later case from the same court, Pegg v. Postal Telegraph & Cable Co., 129 Kans. 413, 283 Pac. 58.

Where deceased was engaged in part in hazardous duties, e. g. running elevators, and in part in nonhazardous duties, as carrying luggage, being a bell boy in a hotel, and was shot by a taxicab driver in a dispute concerning the carriage of some baggage. The Intermediate Appellate Court declined to allow his wife compensation because of the fact that the major portion of deceased's duties were nonhazardous, and that while in discharge of these duties he met his death. The trial court had theretofore made an award. Affirming the trial court's action and reversing that of the Intermediate Appellate Court, the Supreme Court of Louisiana said, in Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303, 304:

"The clear-cut issue therefore presented by this case is whether, when an employee is engaged in both hazardous and nonhazardous branches of the same employment, and he is killed while performing his customary duties, as the result of a quarrel arising out of the nonhazardous branch of his employment, his widow is entitled to compensation under the statute.

"The Court of Appeal has given the statute a narrow and technical, rather than the liberal construction intended and contemplated by the lawmaker, and as expressed in numerous decisions of this court.

"The Employers' Liability Act (No. 20 of 1914), under Subsection 2 of Section 1, applies to the following:

" 'Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation,' etc.

"In the present case, plaintiff's husband was admittedly engaged in both hazardous and nonhazardous branches of his employer's business. It was all one employment for which he received but one compensation. Therefore, it is immaterial whether his nonhazardous duties constituted his major employment to which his hazardous duties were merely incidental, or vice versa. The fact remains that the deceased met his death while actually engaged in performing duties, whether main or incidental, called for by his employment."

Holding that, where an employee about a mill run by water power was drowned in attempting to remove brush from the rack which protected the intake flume, his death was an accident within a statute declaring the employer liable in certain cases for personal injuries to servants caused by accidents arising in the course of employment, the Supreme Court of New Hampshire, reviewing contentions quite akin to those presented in the case at bar, in Boody v. K. & C. Mfg. Co., 77 N. H. 208, 90 Atl. 859, 861, L. R. A. 1916A, 10, Ann. Cas. 1914D, 1280, said:

"The section describes five separate employments, (a), (b), (c), (d), and (e), and there are certain risks peculiar to each which probably induced the Legislature to include those exposed to them within the operation of the act, for the dangers incident to these risks are great and difficult to avoid. Since this is so, the defendants say it follows that a person engaged in one of those employments is not entitled to relief unless his injury results from the particular risk which induced the Legislature to include those engaged in these employments within the operation of the act. To be more specific: They say that a person who is injured while at 'work in any shop, mill, factory, or other place' is not

entitled to the benefits of the act, notwithstanding he is injured by accident arising out of and in the course of his employment, unless his injury is caused either by the negligence of a fellow servant, or by one of the risks incident to work 'on, in connection with, or in proximity to' power-driven machinery; that is, unless his injury is caused by one of the risks which induced the Legislature to include those engaged in employment (b) within the operation of the act. They say that 'not every employe in a given business or establishment covered by the act is within its protection, but only those workmen * * * who are endangered' by the dangerous agencies described in the act, 'while in the scope of their employment.' Is this contention sound?

"It will be helpful, when considering the question, to remember that it is the office of Section 1 to limit the workmen who come within the operation of the act, and of Section 2 to describe an accident that will entitle such workmen to its benefits. In the final analysis, the defendants' contention is that the words 'workmen engaged in * * * work in any shop, mill, factory, or other place, on, in connection with, or in proximity to,' power-driven machinery, are descriptive of an accident, not an employment, which will bring a workman within the operation of the act, or that those words were intended to limit the accidents that will entitle those engaged in such work to the benefits of the act. The act, however, says that it applies 'to workmen engaged in manual or mechanical labor in the employments described in this section,' not to those who are injured while engaged in any one of those employments by the particular risk which induced the Legislature to include those engaged in it within the operation of the act. * * * In short, there is nothing in the act to show an intention to confine its benefits, in so far as those engaged in employment (b) are concerned, to employes who are injured either by the negligence of a fellow servant or by coming in contact with power-driven machinery."

In the case of Polo v. Majestic Coal Co., 208 Ala. 86, 93 So. 728, 729, speaking in general terms, the court remarked:

"And the effect of well-considered cases is that an employee does not step aside from his employment, and is without the protection of the statute, when he is doing a

reasonably necessary act at the time and place to the end that the work and business of the employer may be properly conducted or preserved, or the safety and health of the human and physical Agencies engaged therein be conserved, and the ways, works, machinery, or plant safeguarded. In such a temporary deviation by the employee from the original employment or a temporary departure by him from his usual vocation, in the performance of some work for the employer, he is yet acting within the course of his employment. This is the spirit and letter of the Employers' Liability Act, that while so acting (in the course of his employment, as we have defined) the employee is primarily acting for the master and not for himself. I Honnold on Workmen's Compensation, §§ 105, 114.''

In Reid v. Automatic Electric Washer Co., supra, a factory foreman sustained a fatal injury when the walls of the factory building collapsed, due to a high wind, as he was closing windows—a part of his duty. It was argued in support of the order below dismissing a claim for compensation under the Iowa Workmen's Compensation Statute, that the employee ''was not subjected to a causative danger peculiar to the work and not common to the neighborhood.'' This argument was rejected, however, and the order of dismissal reversed, the court saying:

''In the instant case, under all the circumstances shown, the danger was incidental to the character of the business, and the protection of the property and the lives of other employes; it was not independent of the relation of master and servant; deceased would not have been equally exposed to the same danger apart from the employment; the risk or hazard taken by deceased was in order to perform the master's task; there was casual connection between the conditions under which the work and the duties of deceased was required by defendant to be performed, and the resulting injury; the accident resulted from a risk reasonably incidental to the employment, and the duties of deceased thereunder.''

Of similar purport is the case of Ascher Bros. Amusement Enterprises v. Industrial Commission, 311 Ill. 258,

142 N. E. 488, 490, where, referring to the corporate employer, which was disputing the award made below to the workman, it was said in the opinion:

"Since it was engaged in a business declared extra-hazardous by the act, its employees engaged in the conduct of such extra-hazardous business, regardless of the character of their duties, were all brought within the terms of the act. Illinois Publishing Co. v. Industrial Com., 299 Ill. 189, 132 N. E. 511; McNaught v. Hines, 300 Ill. 167, 133 N. E. 53; Porter Co. v. Industrial Com., 301 Ill. 76, 133 N. E. 652."

Finally, where, in the state of Washington, a carpenter for a department store was killed while turning on an electric switch to sharpen his chisel on a grindstone in a shop used for the repair of the store's delivery vehicles and which contained a power lathe operated by electric current, the workman was denied compensation by the Industrial Insurance Commission. The Commission's rejection of the claim having been overruled and the claim allowed on appeal to the Superior Court, the Commission carried the case to the court of last resort of the state, with the result that the judgment of the Superior Court was affirmed. The Workmen's Compensation Law of the state, in enumerating the hazards intended to be embraced within the term "extra-hazardous" as used in the Act, named "factories, mills, and workshops where machinery is used," as does the law of Wyoming. In the course of its opinion the Supreme Court of Washington, in Wendt v. Industrial Ins. Commission, 80 Wash. 111, 141 Pac. 311, 313, said:

"It being shown that the deceased at the time of his injury was employed in a 'workshop where machinery is used,' that the workshop was a place 'wherein power-driven machinery is employed and manual labor is exercised, * * * over which place the employer of the person working therein has the right of access or control,' and that he was injured 'upon the premises,' it seems to us there is no escape from the conclusion that his injury is within the purview of the act.

"* * * If the employer conducts any department of his business, whether large or small, as an extra-hazardous business within the meaning and defined terms of this act, his workmen would come within the class designated by the act. Such interpretation we believe falls within the letter as well as the spirit of an act that, because of its humaneness and declaration of a new public policy, should be interpreted liberally and broadly in harmony with its purpose to protect injured workmen and their dependents independent of any question of fault."

Something is said in plaintiff in error's brief that the law as applied by the District Court is unconstitutional as in contravention of Section 34 of Article 3 (Article 1, doubtless, being the one intended) of the Wyoming Constitution, and the 14th Amendment of the National Constitution. But a careful search of the record fails to disclose that these questions were submitted to the trial court for its determination. Under the rule that questions not raised below, will not ordinarily be considered on error or appeal, we might well pass them by. 3 C. J. 710, § 608 and cases cited; 6 R. C. L., § 97, p. 96, and cases cited.

However, this court, in Zancanelli v. Coal & Coke Co., 25 Wyo. 511, 173 Pac. 981, 988, where the constitutionality of the Wyoming Compensation Law of this state was vigorously attacked, on the authority of a long list of cases, said:

"And the compensation acts have universally been held good as against almost every kind of attack on the matter of arbitrary or unreasonable classification."

And it was held "that the Act passed and considered * * * is not in conflict with any provision of either the Constitution of the United States or the Constitution of this state."

At that time the law listed, as it still does, among the extra-hazardous occupations wherein compensation should be allowed: "printing plants and workshops where machinery is used" and "laundries operated by power." There is no distinction that we can see between these classifica-

tions and that under consideration here—"restaurants and bakery kitchens where power machinery is used." It may be noted as significant, too, that the Workmen's Compensation Law of the state of Washington, which contains similar classifications as to workshops and laundries has also been administered and remained in that form in the statute law of that state for many years.

While the legislature did not say so in so many words, a glance at the rest of the list of extra-hazardous occupations furnished by the law as it now stands, makes it reasonably clear that in perhaps the majority of instances the use of power machinery in the employment afforded the real basis of classification for hazard—for example "factories", "mills", "foundries", "water-works", "e l e v a t o r s", "dredges", "quarries", "engineering works", etc.

The rules by which such classifications when made by the lawmaking body are to be tested, are fully stated by Mr. Justice Van Devanter in Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. Rep. 337, 340, 55 L. Ed. 369, Ann. Cas. 1912C, 160, from whose opinion in that case we take the following:

"Because the statute is directed against pumping from wells bored or drilled into the rock, but not against pumping from wells not penetrating the rock, and because it is directed against pumping for the purpose of collecting the gas and vending it apart from the waters, but not against pumping for other purposes, the contention is made that it is arbitrary in its classification, and consequently denies the equal protection of the laws to those whom it affects.

"The rules by which this contention must be tested, as is shown by repeated decisions of this court, are these: 1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in

such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.''

The argument advanced here by plaintiff in error, regarding the unequal operation of the statute could be made with quite as much force regarding sundry accidents which are frequently happening in other occupations listed as extra-hazardous by the statute. But, as well said by the Supreme Court of Illinois, in Illinois Publishing & Printing Co. v. Industrial Commission, 299 Ill. 189, 132 N. E. 511, while,—

''At first thought it seems arbitrary and unreasonable to extend the protection of the act to that group of employees of a given industry that is not exposed to the hazards peculiar to the industry. On the other hand, how difficult of administration the act becomes when the courts must determine in each case which employee is and which employee is not exposed to the hazards of the business! * * * The authority of the state to classify employees in groups identified by the business of the employer, without regard to whether the employee is exposed to the special hazards of the employer's business, has been upheld by the Supreme Court of the United States. Louisville and Nashville Railroad Co. v. Melton, 218 U. S. 36, 30 Sup. Ct. 676, 54 L. Ed. 921, 47 L. R. A. (N. S.) 84; Mobile, Jackson & Kansas City Railroad Co. v. Turnipseed, 219 U. S. 35, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463. The act is not subject to constitutional objection.''

It is unquestioned that the workman in the case at bar was exposed to the hazards of the business. He worked in the very room where the power machinery in the bakery was installed. As already indicated, he was injured ''as a result of the employment and while at work in or about the premises occupied, used or controlled by the employer.'' After a careful examination of the statute questioned, con-

sidered in the light of authority, we are not inclined to think that the classification made by the legislature is purely arbitrary and unreasonable. Accordingly, we reach the conclusion that the order of award made by the District Court of Carbon County in this matter should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.